FILED

2006 OCT 10 A 11: 39

GREGORY HARTMANN
CLERK OF COURTS
HAMI. CITY. OH

Danielle M. D'Addesa (0076513)
Drew M. Hicks (0076481)
*Attorneys for Plaintiff*

## COURT OF COMMON PLEAS

## HAMILTON COUNTY, OHIO

| | |
|---|---|
| TSS TECHNOLOGIES, INC.<br>1201 Hillsmith Drive<br>Cincinnati, OH 45215 | )<br>)<br>) |

Case No.   A0608727

(Judge _____ )

Plaintiff,

-v-

ACCURIDE CORPORATION
2315 Adams Lane
P.O. Box 40
Henderson, KY 42419

c/o Statutory Agent
CT Corporation System
1300 East 9th Street
Cleveland, Ohio 44114

Defendant.

**VERIFIED COMPLAINT FOR MONETARY RELIEF**

**JURY DEMAND ENDORSED HEREON**

ORIG, COMP, PARTIES, SUMMONS
( ) CERT MAIL   ( ) SHERIFF   ( ) WAVE
( ) PROCESS SERVER   ( ) NONE
CLERKS FEES _____ TIC
SECURITY FOR COST _____
DEPOSITED BY 76513
FILING CODE H745

For its Complaint against Defendant Accuride Corporation ("Accuride"), Plaintiff TSS

Technologies, Inc. ("TSS") states as follows:

### PARTIES, JURISDICTION AND VENUE

1.     TSS is an Ohio corporation with its principal place of business in Cincinnati,

Hamilton County, Ohio.  TSS is in the business of custom machining and engineering.



D70356700 INI

- 2 -

2.    Upon information and belief, Accuride is a foreign corporation licensed to do business in Ohio and transacts business in Hamilton County, Ohio.  Accuride is in the business of manufacturing and supplying commercial vehicle components.

3.    Jurisdiction is proper in this Court.

4.    Venue is proper in this Court.

## FACTUAL BACKGROUND

5.    TSS incorporates by reference the allegations contained in paragraphs 1 through 4 as if fully re-written herein.

6.    On or about August, 2004, Accuride contacted TSS to upgrade software on two identical wheel run-out dimension inspection machines ("inspection machines") used by Accuride to check the quality of aluminum castings for truck wheels.

7.    These inspection machines were running outdated DOS software and Accuride wanted the inspection machines updated to Windows based software capable of plant wide networking.  Accuride did not want any of the mechanical components of the inspection machines changed or upgraded by TSS.

8.    TSS informed Accuride that this upgrade would require TSS to have a complete source code for the inspection machines before any quote for the project could be written up by TSS.  The source code is a program internal to a machine that provides formulas/calculations necessary for the machine to perform accurate inspections and quality checks on a particular component.

9.      Upon information and belief, on or about August 24, 2004, TSS received from Accuride what it was led to believe was a complete and accurate source code from a "similar machine" that TSS was told could be used to perform the upgrades on the inspection machines.

10.     Relying on Accuride's representations regarding the source code, TSS, on or about September 10, 2004, prepared and sent a quotation to Accuride for this project. A copy of Quotation No. DES08130401 is attached hereto as Exhibit A and is incorporated by reference.

11.     The contract price, including sales tax, Accuride was to pay TSS for the project was $170,269.92.

12.     Upon information and belief, on or about March 1, 2005, Accuride sent a purchase order to TSS accepting the terms and conditions of TSS's quotation for the project. A copy of the purchase order, No. HP5-0505, is attached hereto as Exhibit B and is incorporated by reference.

13.     Specifically, the purchase order stated that the cancellation provision applicable to the contract entered into between Accuride and TSS for this project were per the terms contained in Quotation No. DES08130401.

14.     Pursuant to the cancellation provision in Quotation No. DES08130401, if at any time Accuride was to cancel the project, Accuride would be required to "compensate TSS Technologies for all work completed, restock charges, and any purchases that cannot be returned up to the date of cancellation."

15.     Subsequent to receiving the purchase order from Accuride for this project, Accuride shipped one of the inspection machines to TSS and work on the project began. TSS

immediately started the hardware design and hired E-Technologies Group ("E-Tech"), an automation and information technology provider, to develop the upgraded software design for the inspection machines.

16.    Soon after it began working on the project, E-Tech realized that, despite Accuride's representation to the contrary, the source code provided by Accuride was not complete and that additional information was required for the software design upgrade.

17.    Despite repeated attempts to obtain such additional information from Accuride, TSS and E-Tech were repeatedly told by Bill Newman, Quality Control Manager for Accuride, that TSS had all of the information available in relation to the source code.  However, at this time, neither Bill Newman nor any other representative of Accuride did anything to even determine whether additional information or a more complete source code was available.

18.    Relying on Accuride's representations, TSS and E-Tech spent the next several months trying to recreate the complete source code that existed in the inspection machines in order to fully and accurately develop the upgraded software design.

19.    During this time, Accuride representatives visited TSS's facility in Hamilton County, Ohio for purposes including, but not limited to, training, runoff of parts, and status updates on the project.  Aside from these visits to TSS's facility, however, Accuride was continuously unavailable to discuss project matters.

20.    Due to Accuride's continuous unavailability and its inability to provide a complete source code as originally represented, on or about late December, 2005, TSS and E-Tech took the first inspection machine back to Accuride to run it against the second existing

inspection machine in the hopes of retrieving data that could be used to complete the software design upgrade.

21.    Little was accomplished during this December, 2005 visit because Accuride took several hours to properly install the inspection machine to even begin testing, and then, once installed, Accuride cut testing short in order to shut down the entirety of the plant for vacation.

22.    Then, on or about March 9, 2006, Accuride requested a meeting to discuss the status of the project.    Several representatives from Accuride, including Bill Newman, were present during the meeting.  During discussions, TSS and E-Tech once again informed Accuride that progress on the project was delayed because the source code provided in August, 2004 was incomplete.  At this time, Accuride admitted that the source code delivered to TSS in 2004 was incomplete and immediately provided TSS and E-Tech with additional information from the source code.

23.    After receiving this additional information, TSS was able to make significant headway on the project and immediately began retrieving formulas/calculations from the source code which enabled TSS to make progress on the completion of the software design upgrade.

24.    However, on or about July 11, 2006 – only four months after Accuride provided TSS with the additional information from the source code – Accuride cancelled the project in its entirety.

25.    As of the date of cancellation, TSS had almost completed the entirety of the project with only minor adjustments to be made to certain measurements – adjustments necessitated by the fact that certain formulas/calculations were still missing from the additional

information from the source code provided by Accuride in March, 2006. Put simply, even after receiving the additional information from the source code in March, 2006, TSS still did not have a "complete" source code.

26. Since the cancellation, Accuride has continuously refused to allow TSS to make any further adjustments on the machine to complete the project.

27. By letter dated July 27, 2006, Accuride confirmed its verbal cancellation in writing to TSS and demanded a full refund of its $48,198.00 down payment.

28. On or about August 7, 2006, TSS responded to Accuride's cancellation letter with a demand for all monies due and owing TSS from Accuride pursuant to the cancellation provision in Quotation No. DES08130401. Accuride has verbally communicated to TSS its refusal to pay despite the terms of the cancellation provision.

29. Then, on September 13, 2006, TSS invoiced Accuride pursuant to the cancellation provision for $79,695.05 – which included all monies owed at the time of Accuride's cancellation minus the down payment already received from Accuride. Once again, Accuride verbally communicated to TSS its refusal to pay. A copy of Invoice No. 135536 is attached hereto as Exhibit C and is incorporated by reference.

30. To date, Accuride not only has possession of the first inspection machine with upgrades almost entirely complete, but also a complete drawing package of changes made to the electrical package; a new HMI panel with the latest hardware; a new LVDT interface board; complete integration to the first inspection machine; new screens in the windows based application to mimic the original DOS based system; software logic to mimic the process and

calculations based on the original inspection machine; a laser printer; a zip drive; calculations of the source code; and an operations manual for the new upgraded software for the first inspection machine.

### FIRST CLAIM FOR RELIEF
#### (Breach of Contract)

31.    TSS incorporates by reference the allegations contained in paragraphs 1 through 30 as if fully re-written herein.

32.    TSS and Accuride entered into a valid and enforceable contract whereby TSS agreed to upgrade hardware and software designs on two identical wheel run-out dimension inspection machines in exchange for payment from Accuride.

33.    As described more fully above, Accuride breached the contract by failing to provide a complete source code to TSS to enable TSS to complete the project and, upon cancellation of the project, by failing to pay the amount owed to TSS under the terms of the cancellation provision contained within Quotation No. DES08130401.

34.    Further, as described more fully above, Accuride breached its duty of good faith and fair dealing in relation to the contract with TSS.

35.    As a direct and proximate result of Accuride's breaches of the contract and its breach of its duty of good faith and fair dealing, TSS has been damaged in the principal amount of $79,695.05.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

36.     TSS incorporates by reference the allegations contained in paragraphs 1 through 35 as if fully re-written herein.

37.     Upon information and belief, to the extent Accuride has benefited from the work performed by TSS above and beyond the damages resulting under the contract, it would be unjust and inequitable to allow Accuride to retain such a benefit without making payment to TSS.

38.     To date, Accuride has refused to pay TSS any money above and beyond the original down payment made under the contract.

39.     Accuride has benefited from the goods and services provided by TSS and has been unjustly enriched in an amount in excess of $25,000.00, to be proven at trial.

**WHEREFORE,** Plaintiff TSS Technologies, Inc. respectfully requests that this Court enter judgment in its favor against Defendant Accuride Corporation and that TSS be awarded damages in the principal amount of $79,695.05, plus pre-judgment and post-judgment interest, and all other judicial relief that the Court deems just, proper and appropriate.

Respectfully submitted,

*Danielle M. D'Addesa*

Danielle M. D'Addesa (0076513)
Drew M. Hicks (0076481)
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
Tel: (513) 579-6545
Fax: (513) 579-6457
ddaddesa@kmklaw.com
dhicks@kmklaw.com
*Attorneys for Plaintiff*

OF COUNSEL:

KEATING MUETHING & KLEKAMP PLL
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
(513) 579-6400

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## INSTRUCTIONS TO THE CLERK

Please serve the above named Defendant and its statutory agent at the addresses listed above via certified mail, returnable according to law.

1750193.1                                    - 10 -

## VERIFICATION

STATE OF OHIO                    :
                                 : ss
COUNTY OF HAMILTON   :

I, David Hummel, verify under the pains and penalties of perjury that I am a Project

Manager for TSS Technologies, Inc., plaintiff in the above action, and that the facts set forth in

the foregoing Verified Complaint are true and correct to the best of my knowledge, information,

and belief.

_____
David Hummel

DATED:        October  5 , 2006

Sworn to and subscribed in my presence by said David Hummel, this  5  day of

October, 2006.

_____
Notary Public

JANETTE L ABS
NOTARY PUBLIC FOR STATE OF OHIO
MY COMMISSION EXPIRES FEBRUARY 12, 2009